(No. 4113— )

CARLO J. LUBERTOZZI, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 24, 1949.*

FRANK MARTOCCIO, Attorney for Claimant.

HON. GEORGE F. BARRETT, Attorney General; HON. WILLIAM J. COLOHAN, Assistant Attorney General, for Respondent.

DAMRON, J.

The claimant, Carlo J. Lubertozzi, filed his complaint herein on August 24, 1948 alleging that on August 25, 1947 he was injured by reason of an accident arising out of and in the course of his employment by respondent.

The cause was heard before Commissioner Blumenthal on November 30, 1948, and transcript filed on January 13, 1949. No jurisdictional questions were raised.

The claimant testified that on August 25, 1947 he was a temporary employee, as a bricklayer by the Department of Public Welfare at the Chicago State Hospital. While restoring a wall in one of the buildings, he stepped down from his scaffold, tripped over some rubble on the floor and fell to the concrete floor alongside a ditch. He limped around for awhile and thought "it would go away", but when he got worse the next day, he talked to Mr. John Wright, the chief engineer, and the latter directed him to Dr. Louis Olsman. Dr. Olsman gave him a prescription and instructed him to take hot baths, but the following morning he was unable

to get up and go to work. He did not report back to work until two weeks had elapsed. Dr. Olsman sent him for X-rays and prescribed diathermy treatments. He was later sent to the Illinois Research Hospital under the care of Dr. Phillips. While under this treatment for a period of about two weeks he was on light duty. At present, he is working, but his leg falls asleep; is numb and feels alternately cold and hot. In performing his work he ''feels'' his back when he has to stoop too much. Prior to the accident, he never had any trouble with his back or leg.

While still under treatment by Dr. Phillips, he was discharged by respondent, but about a week later, he obtained employment and is earning $2.75 per hour or $110.00 for a forty hour week.

Dr. Louis Olsman, surgeon employed at the Chicago State Hospital, testified that he first saw claimant on September 4, 1947 and was given a history of having been injured several days previously by falling in a ditch. The impression, following an X-ray was a right sacroilliac strain. Subsequently, diathermy was instituted as a daily treatment for several weeks. When claimant's symptom of pain continued, he was referred to the University of Illinois Hospital and examined in the orthopedic and neurology clinics in both of which a diagnosis was made of a herniated inter-vertebral disc of the fifth lumbar and first sacral vertebra. The X-rays taken at the Chicago State Hospital and sent to the University of Illinois Hospital were produced and in the opinion of the witness corroborated the findings.

Dr. S. I. Weiner was called on behalf of claimant. He specialized in orthopedics and traumatic surgery and testified as to his qualifications in this field. He examined claimant on November 27, 1948 and took

X-rays. The clinical examination disclosed oblique flexion restricted to the right tendon Achille's paravertebrae. The reflex was absent and there was also a decrease in the right patella reflex on the right side. The pathology of the X-rays was interpreted as being consistent with a finding of a displaced inter-vertebrae disc. His diagnosis was a dislocation of the nucleous polyposis on the right side of the lumbar spine between the fourth and fifth lumbar vertebrae. The effect of this is to produce pain and disability of the extremity; pain in the lower back aggravated by coughing and sneezing and referred down the right leg. In his opinion there was an approximate 75% permanent loss of use of the right leg. The disability arises from the origin of motor and sensory nerves which supply and control the extremity. The condition will not improve and may get worse if the displacement takes place towards the spinal canal instead of laterally as at present. Dr. Olsman recalled as a witness testified that in his opinion an injury such as that described would result in a disability of about 50%.

The evidence of Dr. Olsman indicates that claimant was in error in stating that he reported to Mr. Wright on August 25th, the day following the accident and that he was examined by Dr. Olsman on the same day. On cross-examination claimant was vague and not certain as to dates but in view of the other indisputable evidence in the record the conflict of the testimony in this respect is not of itself significant or essential to the merits of the case.

The evidence, and particularly respondent's own witness, Dr. Olsman, leaves no doubt that claimant has sustained a permanent partial loss of use of his right leg to the extent of not less than 50%.

It was stipulated that claimant was employed at a rate of $382.00 per month and that when the accident was sustained he had three children under sixteen years of age.

Claimant testified he did not report for work for two weeks during which time he was paid his full wage, $88.17 per week, or $176.34. His compensation rate would be the maximum of $19.50 increased to $23.40 by reason of his three children under sixteen years.

For a 50% permanent, partial loss of his right leg, claimant is entitled to ninety-five weeks at $23.40 or $2,223.00. From this $129.54 must be deducted, being the excess payment for non-productive time, or the difference between $176.34, his wage for two weeks, and the $46.80 to which he was entitled for temporary total disability compensation.

This entitled claimant to a new award of $2,093.46, of which seventy-six weeks has accrued.

An award is hereby entered in favor of claimant, Carlo J. Lubertozzi, i nthe sum of Two Thousand Ninety-three Dollars and Forty-six Cents ($2,093.46). Of this award the sum of $1,778.40 representing 76 weeks has accrued as of February 9, 1949, which is payable to claimant in a lump sum. The remainder of said award amounting to the sum of Three Hundred Fifteen Dollars and Six Cents ($315.06) is payable to claimant at $23.40 per week for 13 weeks, with an additional final payment of $10.86.

A. M. Rothbart was employed to take down and transcribe the testimony in support of this claim, for which he made a charge of $53.60. We find this charge to be fair, reasonable, and customary for the services rendered.

An award is therefore hereby entered in favor of

A. M. Rothbart in the sum of Fifty-three Dollars and Sixty Cents ($53.60).

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."